HOUSTON, Justice.
The plaintiff, Johnny L. Kilgo, appeals from a summary judgment for the defendant, *73 Nancy P. McClellan, a practicing attorney in Cullman County, in this action seeking damages under the Alabama Legal Services Liability Act, Ala. Code 1975, § 6-5-570 et seq. We reverse and remand.
Kilgo, a farmer, retained McClellan in the fall of 1989 to file a petition on his behalf under Chapter 12 of the Bankruptcy Code (Bankruptcy Reform Act of 1978, Title 11, United States Code). Chapter 12 provides a procedure for the adjustment of debts of a family farmer with regular income. McClellan failed to prepare and submit to the bankruptcy court a plan for restructuring Kilgo’s debts, and she eventually advised Kilgo to dismiss his bankruptcy petition. Kilgo lost his farm through foreclosure in the spring of 1990. Sometime in June 1993, Kilgo read an article in Progressive Farmer magazine entitled “New Life for Chapter 12?” That article, in pertinent part, stated:
“Chapter 12 of the U.S. Bankruptcy Code was enacted by Congress in 1986 to assist financially troubled farmers. It allows farmers to reduce the amount of their secured debt to the present value of the collateral while continuing to control their farms.
[[Image here]]
“Chapter 12 was created in response to the large number of farmers unable to repay their debts because of poor yields and low prices in the early to mid-1980’s. The value of their loan collateral, particularly land, had taken a nosedive — in some cases, by 50% or more.
[[Image here]]
“Under Chapter 12, debtors are allowed to write down secured debt to its present fair market value, which, in most cases, is much less than its original loan value. In return, the farmer agrees to a repayment plan for the remaining debt.
[[Image here]]
“The debate continues as to how effective Chapter 12 has been in achieving its objectives. Farmers who have used Chapter 12 generally feel it has helped them survive.
“Stanley and Delma Dunegan had their backs against the wall early in 1987. They had just come through six consecutive years of weather-related disasters. Farmland values had declined by 50%. Cattle prices were at a 10-year low. And their county FmHA supervisor was unwilling to cut them any slack on a $600,000 loan they had refinanced at 13% interest in 1981.
“The couple from Bokchito, Okla., east of Durant, was in danger of losing everything, including 480 acres of land and about 300 cows.
“Filing for Chapter 12 bankruptcy protection enabled them to keep their land, their cattle, and much of their equipment. Their debt was adjusted downward to reflect its true value. And they were given the chance to develop a repayment schedule that had a more tolerable interest rate....
“ ‘The way I figure it,’ Dunegan says, ‘Chapter 12 opened a door for us and let us back in.’
[[Image here]]
“Rick A. Yarnall, an attorney in Sioux Falls, S. Dak., and president of the Association of Chapter 12 Trustees, believes Chapter 12 has been very successful.
“ ‘I’ve handled about 400 cases,’ he says. ‘Based on my own experience and that of other trustees, about 90% of all Chapter 12 cases that have been filed have been confirmed (approved). And of those, 75% have been successful in coming out of bankruptcy as viable farming operations.’ ”
“Wondering” whether his bankruptcy case had been properly handled by McClellan, Kilgo contacted Rick Yarnall for additional information. Yarnall referred Kilgo to a Birmingham attorney, Jim Henderson. Henderson met with Kilgo sometime between the latter part of June 1993 and July 8, 1993; Henderson questioned to some extent McClellan’s handling of Kilgo’s bankruptcy ease, but stopped short of offering any opinion as to whether McClellan had committed malpractice.[1] Kilgo was subse *74 quently referred by another attorney to attorney Vera Hollingsworth, and he met with her either on July 9 or July 12, 1993.[2] Holl-ingsworth told Kilgo that he should “pursue” his investigation, but she declined to get involved, because she knew McClellan personally. An attorney Kilgo’s wife knew, Bill Longshore, then suggested that Kilgo contact attorney Keith Veigas. Veigas met with Kilgo on July 13, 1993, and advised him to speak with Henry Stuckenschneider, a bankruptcy trustee. Kilgo spoke with Stucken-schneider that same day, July 13, 1993, and Stuckenschneider told him that McClellan should have assisted him in preparing and submitting to the bankruptcy court a Chapter 12 plan. Kilgo met with Veigas again on July 14,1993, and on that date Veigas agreed to represent him. Kilgo filed his complaint on January 4, 1994.
The trial court entered a summary judgment for McClellan on the ground that Kil-go’s action was barred by the statute of limitations set out in § 6-5-574. That section, in pertinent part, provides:
“All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. ...”
Unless tolled, the two-year limitations period set out in § 6-5-574 begins to run on the date the cause of action accrues, i.e., when a person sustains damage or harm upon which an action can be maintained. Michael v. Beasley, 583 So.2d 245 (Ala.1991). The trial court apparently concluded that Kilgo could not have reasonably discovered within two years after he lost his farm that he had a basis upon which to file a malpractice action against McClellan. The trial court also concluded that Kilgo did not have sufficient information upon which to base a malpractice action until July 13, 1993 (less than six months before his complaint was filed on January 4,1994), when he spoke with Stuckenschneider. However, the trial court ruled that, as a matter of law, Kilgo’s action was time-barred because the Progressive Farmer article, which Kilgo had read in June 1993, more than six months before he filed his action on January 4, 1994, contained facts that ultimately led Kilgo to discover that McClellan might have breached the appropriate standard of care in handling his bankruptcy case.
Because Kilgo filed his complaint more than two years after any cause of action against McClellan would have accrued, his action was barred as a matter of law unless, as he contends, a fact question exists as to whether the running of the statutory period of limitations was tolled. Kilgo argues that he lacked sufficient information upon which he could base a malpractice action until at least July 9, or July 12, 1993, when he met with Hollingsworth. Kilgo maintains that the statutory limitations period was tolled until he had acquired sufficient information from Hollingsworth indicating that he had a basis upon which to file a malpractice action against McClellan, and that he filed his action within six months from that date. McClellan argues that Kilgo could have reasonably discovered within two years after he lost his farm that he had grounds upon which to file a malpractice action against her. In the alternative, McClellan argues that Kilgo failed to file his action within six months from the date he read the Progressive Farmer article, when, McClellan maintains, Kilgo obtained the information that sparked his investigation into her handling of his bankruptcy case.
The applicable portion of § 6-5-574 requires that an action against an attorney be *75 filed within two years after the cause of action accrued, “provided that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.” (Emphasis added.) We agree with the trial court’s conclusion that Kilgo could not have reasonably discovered within two years after he lost his farm that McClellan might have committed malpractice. We also agree with the trial court’s conclusion that Kilgo did not have sufficient information upon which to base a malpractice action until July 13, 1998 (less than six months before he filed his complaint), when he spoke with Stuckenschneider. However, we cannot agree with the trial court, and we cannot hold, as a matter of law, that the facts set out in the Progressive Farmer article were such as would necessarily lead a reasonable man in Kilgo’s position to discover that he had a cause of action against his former attorney. Although it is true, as McClellan contends, that the Progressive Farmer article sparked Kilgo’s interest in the way his bankruptcy case had been handled and that it was that article that ultimately led him to Stuckenschneider, it is also true that it was not until Kilgo met with Henderson that he was first able to discuss the particular circumstances of his bankruptcy case with an attorney. Before his meeting with Henderson, Kilgo knew only generally that certain remedies were available to farmers under Chapter 12 and that a number of farmers had been successful in coming out of bankruptcy with viable farming operations. Although Henderson stopped short of offering any opinion as to whether McClellan had committed malpractice, he did question her handling of Kilgo’s bankruptcy ease. In a similar vein, Hollingsworth questioned McClellan’s handling of Kilgo’s bankruptcy case, even though she also stopped short of getting personally involved. In our view, a fact question is presented as to whether the six-month limitations period began to run on the date Kilgo read the Progressive Farmer article, or whether it began to run on a later date, either when Kilgo discussed the particular circumstances of his bankruptcy case with Henderson or when he discussed them with Hollingsworth. As previously noted, a fact question exists as to exactly when Kilgo met with Henderson. If the jury should find that Kilgo met with Henderson on July 8, 1993, as he claims to have done, and that this is the date from which the six-month limitations period should be measured, then this action was timely filed. Kilgo met with Holl-ingsworth on either July 9 or July 12, 1993, less than six months before he filed his complaint. If the jury should find that the six-month limitations period began to run on the date Kilgo met -with Hollingsworth, then this action was timely filed. Because of the factual questions presented in this case, the summary judgment was not proper. Rule 56, Ala.R.Civ.P.
For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, INGRAM and BUTTS, JJ., concur.

. The record presents a factual question as to exactly when Henderson met with Kilgo. Kilgo testified in his deposition that his meeting with Henderson could have occurred “the first of *74 July,” although his "best judgment" was that the meeting occurred sometime in June. Henderson testified by affidavit that he had no personal recollection of having spoken with Kilgo, but that his records indicated that he had "calendared” a meeting with Kilgo on the afternoon of July 8, 1993, at 2:00 p.m.

. The record and briefs are not clear as to which day Hollingsworth met with Kilgo.